**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRIAN FORTIER,

        Plaintiff,

v.     CIVIL CASE NO. 05-CV-60004
     HON. MARIANNE O. BATTANI

UNITED FOOD AND COMMERCIAL
WORKERS UNION LOCAL 876,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Doc. #23). The Court heard oral argument on the motion on June 27, 2006, and at the conclusion of the hearing took this matter under advisement. Upon further consideration, the Court **GRANTS** Defendant's motion.

**I. FACTS**

Plaintiff Brian Fortier worked for Defendant United Food and Commercial Workers ("UFCW") Local 876 as a business representative from late 1995, until his discharge on October 31, 2003. Ance Johnson was the President of Local 876 during Plaintiff's entire term of employment and was responsible for both Plaintiff's hiring and firing. Defendant is a labor organization within the meaning of Section 301 of the federal Labor Management Relation Act ("LMRA"), 29 U.S.C. § 185.

As a business representative, Plaintiff organized new union members and serviced current members, participated in contract ratification and other member meetings, assisted at various labor events or strikes, and handled phone calls and

inquires from members.  In addition, the UFCW International occasionally "borrowed" staff, including Plaintiff, from Local 876 to assist in strikes, lockouts, or other duties across the country.

From 1996 to 2001, Plaintiff's primary assignment was to service members at some Farmer Jack and Kroger stores, in addition to a few small chains such as Food Town, Danny's, the Pharm, and Polly's.  In 2001, Johnson discovered Plaintiff was romantically involved with Kim Zagresky, a store manager at a Food Town store Plaintiff was assigned to service.  Johnson confronted Plaintiff about the relationship, advised Plaintiff that this was a conflict, and removed Plaintiff from Food Town store assignments.  Johnson maintains he informed Plaintiff that the only reason Plaintiff was not being fired was because Food Town was such a small employer.  Johnson also claims that he informed Plaintiff that the relationship created a trust problem with union members and instructed Plaintiff to personally inform Johnson if anything like this came up again.  However, Plaintiff denies both that Johnson warned him about dismissal and that Johnson informed Plaintiff that he should personally consult with him regarding similar incidents in the future.  Plaintiff continued his primary assignments with Farmer Jack stores until his termination on October 31, 2003.  During this period, Plaintiff typically reported to Rick Blocker, who was in charge of the Farmer Jack account at the time.

Plaintiff and Ms. Zagresky became engaged in April 2001, and married in May 2002.  In September 2002, Mrs. Fortier took a management position at a Kroger store in Michigan.  Kroger was one of the two largest employers of Local 876 members, with more than 9,000 members employed.  As a manager, Mrs. Fortier could hire, suspend,

discipline, assign, and otherwise supervise Local 876 members.  Although Plaintiff admits that he did not advise Johnson of his wife's new employment position, Plaintiff contends that he informed various Local 876 employees including Robinson, Blocker, and Jim Restich, the Executive Assistant in charge of the Kroger account.  Both Plaintiff and Mrs. Fortier state that, prior to her hiring by Kroger, Robinson met with Jerry Littman, the Human Resource representative for Kroger, and that Robinson assured Littman there would be no objection from UFCW if Kroger hired the wife of a UFCW Local 876 Business Representative.  Robinson denies this conversation in a sworn affidavit.  Robinson states in his deposition that he believed Mrs. Fortier's management position would create a conflict of interest, but felt it was not his position to report his concern to Johnson.  See Pl.'s Ex. D, Robinson Tr. at 42-43.

During the fall of 2003, a variety of labor disputes and difficult contract negotiations involving Local 876 were breaking out across the country, including disputes involving Kroger stores in several states.  On October 12, 2003, Kroger sent Mrs. Fortier to Southern California to work in Ralph's stores, which are affiliated with or owned by Kroger.  UFCW members had been locked out.  Plaintiff testified that Mrs. Fortier was there about three weeks during this episode and went again later for a few weeks.

Either on or shortly before October 31, 2003, Johnson became aware that Plaintiff's spouse was working at the Ralph's store.  Johnson confronted Plaintiff about Mrs. Fortier's work on October 31, 2003.  Johnson claims he told Plaintiff that he could not trust him again, that he did not think members could trust Plaintiff to represent them, and that it was unwise to have a Business Representative married to a store manager

at an employer where Local 876 represents the members.  Consequently, Johnson fired Plaintiff.  The parties dispute whether Johnson referred to Mrs. Fortier as a "scab" and told Plaintiff that he had to let him go.

Plaintiff then asked Johnson if they could talk again the following Monday, after Plaintiff spoke to his wife.  Johnson agreed.  On Monday, November 3, Plaintiff returned, wearing a concealed tape recorder, and requested that Johnson rehire him and assign him exclusively to Farmer Jack.  Johnson declined.  He informed Plaintiff that the circumstances created a conflict of interest and that it was not in the best interests of the Local to keep Plaintiff as an employee.

Plaintiff unsuccessfully appealed his termination to the Local 876 Executive Board.  Plaintiff never appealed to the International President.  Instead, he filed his complaint alleging Defendant terminated his employment without reasonable cause.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  As the United States Supreme Court ruled in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986),

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the

> [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. Gen. Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

## III. ANALYSIS

Defendant raises three arguments in support of its motion. Defendant first asserts that Plaintiff's claims are preempted. Next, Defendant argues that the complaint must be dismissed because Plaintiff failed to exhaust his administrative appeals. Finally, Defendant contends that there is no genuine issue of material fact that Plaintiff's termination was for good cause. Each argument is discussed below.

### A. Preemption

The first matter the Court must address is whether Plaintiff's failure to submit his claims to the NLRB prevents him from proceeding in this Court. Plaintiff's theory in this case is that Defendant cannot discharge him because his wife crossed a picket line or was working in a store where UFCW members were locked out. Such conduct

constitutes an unfair labor practice under § 8(b) because Plaintiff's wife had the right to refrain from joining a union under Section 7 of the NLRA. 29 U.S.C. § 157.

Defendant argues Plaintiff's claim is preempted as it falls within the exclusive jurisdiction of the NLRB. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959) (noting that when an activity is either protected or prohibited by §7 or §8 of the Act respectively, the states and the federal courts must defer to the exclusive competence of the NLRB). Therefore, Defendant concludes that Plaintiff's remedy, if any, was with the NLRB. Because Plaintiff failed to file an unfair labor practice charge and the statute of limitations has run, the Court must dismiss his lawsuit.

The Court has reviewed Garmon and finds the principle inapplicable to the facts of this case. Only "[w]here there is an *arguable* question as to whether an employee is a supervisor or an employee covered under the NLRA," must that question [ ] be submitted initially to the NLRB for a decision." Dominguez v. Excell Agent Serv., 137 F.Supp.2d 1264, 1267 (D. N.M. 2001) (emphasis added). The Dominguez court reasoned that if the plaintiff *clearly* was a supervisor, his state-law claim would not be preempted.[1] Id. at 1266-1267 (citation omitted). Consequently, in this case, preemption would be required if and only if Mrs. Fortier's status as an employee were debatable. It is not. Mrs. Fortier is not a protected party for purposes of §7 of the LMRA; she is a supervisor. See §152 (11) (defining supervisor). Because Mrs. Fortier was not an

---

[1] See Hanna Mining Co. v. Dist. 2, Marine Eng'rs Beneficial Ass'n, 382 U.S. 181, 190 (1965) (holding that "the Board's statement [that the engineers were supervisors and thus not subject to the NLRA] *does resolve* the question with the clarity necessary to avoid preemption"). (Emphasis Added).

employee under the NLRA, she had no §7 rights and engaged in no protected activity as defined therein. Therefore preemption does not bar Plaintiff from proceeding with his claim.

### B. Exhaustion of Appeals

The Court next assesses Defendant's contention that Plaintiff's failure to exhaust available internal union appeals before filing suit requires its dismissal. Although Plaintiff did appeal to the Local 876 Executive Board, he did not appeal the Board's denial to the International President. Defendant contends that the International Constitution and Local Bylaws provide an internal union appeal procedure that requires members to exhaust the procedures prior to filing suit. Because Plaintiff never appealed to the International President, Defendant claims the failure to exhaust internal appeals provides sufficient grounds to dismiss this suit.

Usually a plaintiff is required to exhaust union appeals procedures before bringing a suit under § 301 of the LMRA. Further, the court has the discretion to require exhaustion of internal union appeal procedures in cases dealing with "internal union matters." Clayton v. Int'l Union UAW, 451 U.S. 679, 688 (1981). The Court nevertheless declines to dismiss on this ground.

Although an appeal to the International President is available, it is by no means compulsive, as the Defendant claims. Defendant's reliance on Article 10(E)1 of the Constitution, as support for its position, is misplaced. The relevant sections of the Constitution explicitly state, "The Local Union President may terminate for reasonable cause, subject to an appeal to the Local Union Executive Board and such further appeal

as may be provided in the Local Union's bylaws." (Pl. Resp. to Def. Mot. for Summ. J. p. 7). Correspondingly, the bylaws state, "The President may terminate for reasonable cause, subject to an appeal to the Local Union Executive Board." (Id. at p. 8). Plaintiff fulfilled this obligation, and there is no other language in the bylaws mandating an additional appeal to the International President. The Constitution and Bylaws are the exhaustive tools for determining the scope of the required union appeal procedures. Accordingly, the Court finds Plaintiff fulfilled his obligation with his appeal to the Local Union Executive Board.

The Court's finding is not altered by the unpublished decision in Carlton v. Local 7 UFCW, 43 Fed. Appx. 289 (10th Cir. 2002) (holding that a suit against a UFCW local *as an employer* is barred where the discharged fails to exhaust the remedies available under the Constitution). The facts of Carlton are distinguishable. In the case before this Court, Plaintiff did fulfill his obligations under the Constitution and Bylaws by appealing to the Local Union Executive Board. Further appeal is not required.

### C. Reasonable Cause

Finally, the Court considers the merits of whether Defendant had reasonable cause to terminate Plaintiff's employment. Defendant claims it had reasonable cause due to the conflict of interest spurred by the facts of this case. Specifically, it asserts that Plaintiff's relationship with a Kroger-affiliated supervisor created interests adverse to and which could reasonably affect Local 876's membership and representation. In response, Plaintiff asserts that genuine issues of material fact prevent a finding that his

termination was for reasonable cause. He claims his termination was retaliatory, arising out of his wife's conduct and that Johnson's reasons were not worthy of belief.

### 1. Retaliation

Plaintiff's claim is not undermined by the fact that he did not engage in protected activity himself. When an employer retaliates against a close relative of the person engaging in protected activity, the relative may bring a claim under 42 U.S.C. § 2000e-3(a), even if the relative is not the person who engaged in the protected activity. EEOC v. Ohio Edison, 7 F.3d 541 543 (6th Cir. 1993). That case law does not advance Plaintiff's claim here because the Taft-Hartley amendments to the NLRA exclude supervisors from the protections of the Act. Employers are free to discharge supervisors without violating the Act's restraint against discharges on account of labor union membership. Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 653 (1974). Furthermore, the language under Section 7 of the LMRA limits those protected to "employees." Under 29 U.S.C. § 152 (3), an "employee" is defined as, "any employee. . .but shall not include. . .any individual employed as a supervisor. . . ." Additionally, under § 152 (11), a supervisor is defined as "any individual having authority, in the interest of the employer to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees. . . ." There is no dispute that Mrs. Fortier had the authority identified in § 152(11). She could hire, transfer, suspend, lay off, assign, etc., on behalf of her employer, Kroger. (Def.'s Ex. 22, Fortier Tr. 86; Def.'s Ex. 1, Johnson Aff. 28). Accordingly, even if Mr. Johnson terminated Plaintiff in retaliation of the actions of Mrs. Fortier during the lockout, she

engaged in no protected activity, and her husband is accorded no status to bring a claim under § 2000e-3(a).  Conduct taken in retaliation for her crossing or not crossing a picket line simply does not give rise to a claim that public policy has been violated.

### 2. Veracity

Plaintiff argues that there is substantial evidence supporting his position that Johnson's explanation is not truthful.  He claims Johnson knew Mrs. Fortier was working in management at Kroger well in advance of Plaintiff's October 31, 2003, termination.  Plaintiff testified that he told three Executive Assistants, in addition to the secretary/treasurer, Ms. Collins.  Plaintiff has not provided sworn statements from any of these witnesses that they actually relayed the information to Johnson, and two of these witnesses testified that they could not even recall if they knew Mrs. Fortier was working at Kroger prior to Plaintiffs' termination.  Another witness admitted that he knew the information and testified that he urged Plaintiff to tell Johnson, but did not tell Johnson himself.  Furthermore, the tape recording of the November 3, 2003, meeting reveals that Plaintiff admitted he was wrong for not having told Johnson that his spouse was working in Kroger management.  Plaintiff said to Johnson, "…yes, I should have told you, I guess, but I thought other people would have and that was wrong and I didn't tell you."  (Def.'s Ex. 27, p. 1).  Plaintiff has not presented evidence to show Johnson's explanation of the basis for Plaintiff's termination is unworthy of belief.

Even if Mr. Johnson knew of Mrs. Fortier's employment well before the October firing, and did in fact terminate Plaintiff due to the fact that his wife crossed the picket line, the Court finds no reasonable person would deem Johnson's rationale

unreasonable.  Plaintiff's marriage to a supervisor of employees represented by Local 876 establishes the existence of conflicting interests, issues with trust and the overall best interests of the organization.  These issues support a finding that the termination was reasonable.  As Congress recognized in enacting the Taft-Hartley amendments, "[N]o one, whether employer or employee, need have as his agent one who is obligated to those on the other side, or one whom, for *any* reason, he does not trust."  H.R. Rep. No. 245, 80th Cong., 1st Sess., 16, 17 (1947) (emphasis in original).  Thus, it is apparent Defendant's explanation for the termination is reasonable as a matter of law and does, in and of itself, demonstrate that Plaintiff would have been terminated in any event.

**IV.   CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.  Plaintiff's Complaint is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

                                                  s/Marianne O. Battani
                                                   MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

DATED: August 23, 2006

## CERTIFICATE OF SERVICE

    A copy of this Order was mailed and/or electronically filed to Ronald Reosti and Lisa M. Smith on this date.

                                            _s/Bernadette M. Thebolt_____
                                            Deputy Clerk